Donald Merkin, SBN 62121
Merkin & Associates, Attorneys
4747 Morena Boulevard, Suite 302
San Diego, California 92117
T 858 454-3244
F 858 270-1420

Attorney for Plaintiff Laurel Hill Escrow Services, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREL HILL ESCROW SERVICES, INC., a California corporation,<br><br>    Plaintiff,<br>VS.<br><br>IDEVELOPMENT, INC., a California corporation; ADVANTAGE TOWING COMPANY, INC., a California corporation; MICHAEL BRANDEN, an individual; RE/MAX; COMMUNITY BANK; JIMMY JOHNSON'S KEARNY MESA CHEVROLET; LOMA RIVIERA 76; NCO; BRIDGET LEGERRETTE; GEORGE PONCE; THE HOSE PROS; VOIT COMMERCIAL BROKERAGE; WELCH'S TIRES, INC.; and AT&T,<br><br>    Defendants. | CASE NO. 08-CV-0301<br><br>DECLARATION OF DONALD MERKIN IN RESPONSE TO ORDER TO SHOW CAUSE |

I, Donald Merkin, declare:

1.  I am an attorney licensed in all California courts and in this Court and I am attorney for the plaintiff in this action. This declaration responds to Superior Court Judge Oberholtzer's January 24, 2008 ruling setting an OSC requiring the escrow company plaintiff to justify its retention of $5,577.50 prior to

968AA-P11a                                    1

the filing of the instant interpleader and deposit of interpleaded funds in the amount of $252,067.50.

2. Defendants opposed plaintiff Laurel Hill Escrow's motion to be dismissed, asserting that Laurel Hill Escrow had failed in its duties. The Court continued the hearing on the motion until February 29, 2008, and required Laurel Hill Escrow to file, on February 22, 2008, a report on the status of service on each defendant, and to respond to the above-mentioned OSC.[1]

**COMPLIANCE WITH JUDGE OBERHOLTZER'S RULING**

3. The status report is file herewith.

4. The following responds to each of the alleged failures as described in the ruling, Exhibit 1.

A. All known claimants *were* included in the complaint. The complaint was amended to add a claim unknown at the time of the filing. The IRS claim was unknown until one week before the scheduled hearing on plaintiff's motion. No DOEs were named in the pleadings. Immediately upon learning of the IRS claim (by a telephone call from an IRS attorney seeking information about the case), plaintiff filed and served a Second Amended Motion to be Dismissed listing the IRS claim. The IRS intervened and removed the case to this federal court.

B. All known defendants *were* served with the First Amended Complaint in Interpleader and with the Motion to Be Dismissed. On September 12, 2007, the Certificate of Service was

---

[1] A copy of the ruling is attached as Exhibit 1.

968AA-P11a

2

filed pursuant to San Diego Superior Court Rules, Division II, Rule 2.5.  In addition, pursuant to Judge Oberholtzer's ruling, proofs of service were filed on February 6, 2008.

    C.    The IRS' Intervenor Complaint was already served on all parties by the IRS.

    D.    Four defendants withdrew their claims and asked to be dismissed: NCO Financial Systems, Inc., California Department of Motor Vehicles, Jimmy Johnson's Kearny Mesa Chevrolet, AT&T and Re/Max.  On January 11, 2008, plaintiff submitted Requests for Dismissal which were signed by the clerk and returned on January 18, 2008.

    E.    Pursuant to Judge Oberholtzer's ruling, Requests for Default were filed on February 8, 2008, against Michael Branden, Loma Riviera 76, The Hose Pros, Voit Commercial Brokerage, and Welch's Tires, Inc.  Default was entered against the Hose Pros on February 7 [sic], 2008.

**BACKGROUND OF THIS INTERPLEADER ACTION**

5.  As described in the First Amended Complaint, along with the $257,645.00, on April 25, 2007, Laurel Hill Escrow was given a purchase agreement and escrow instructions signed by only one party to the sale--the buyer, Advantage Towing, Inc.  The seller did not sign.  Escrow does not commence the process of obtaining a Tax Clearance, publication of the Bulk Sales Notice, etc. unless and until authorized by the seller.  No one informed Laurel Hill Escrow of the IRS claim, and since no Tax Clearance could be sought, the IRS claim was never disclosed to Laurel Hill Escrow.

968AA-P11a                                   3

6. Almost immediately after April 25, claims began to come in to escrow. It was soon clear that the total of the known claims exceeded the funds in escrow. Shortly thereafter, defendant Michael Branden, the admitted architect of the transaction, faxed to Laurel Hill Escrow an "Addendum" signed by both parties which authorized payment to Avatar Legal of all the funds held by Laurel Hill Escrow. Avatar Legal, however, refused to accept the transfer.

7. Laurel Hill Escrow was then told that the actual transfer of assets as well as approximately $20,000 cash had taken place weeks or months before April 25, and that the buyer was operating its business with the purchased trucks and other assets. Escrow had not been given authorization from the seller to go forward with the escrow, the bulk sales law had clearly, been ignored, the escrow was insolvent, the broker who claimed responsibility for the entire boondoggle was moving heaven and earth to get his commission paid ahead of creditors and before the escrow collapsed. Creditors large and small were looking to Laurel Hill Escrow to protect their claims within the bulk sales law as would be the norm if escrow had really been opened with mutual instructions.

8. Accordingly, Laurel Hill Escrow filed its interpleader complaint on May 22, 2008. Shortly thereafter, more claims came to light and on June 19, 2008, plaintiff filed its First Amended Complaint in Interpleader. Plaintiff mail served the latter complaint together with Notices of Acknowledgment of Service. All but one were eventually returned signed. That one, Loma

968AA-P11a                                4

Riviera 76, was personally served on September 2, 2007, one day after the last Acknowledgment of Service was signed. The Certificate of Service was filed September 12, 2007. In this time period, the president of Laurel Hill Escrow, Maxine M. Beye, suffered a heart attack and stroke, incapacitating her and making her unable to assist counsel with the interpleader documents. In approximately late October, Plaintiff sought a hearing date for a Motion to Be Dismissed and was given December 14, 2007. Thereafter, the court continued the hearing date to January 25, 2008. On December 18, 2007, plaintiff filed its moving papers, which were subsequently amended twice, once to add a lienholder and once as described above to add the IRS.

    9. Between April 25, 2007 and May 30, 2007, Laurel Hill Escrow incurred expenses, including $5,577.50 for Laurel Hill's costs. These costs included processing, audit fees, considerable correspondence by plaintiff and counsel with Michael Branden, and attorneys fees, most of which involved dealing with Michael Branden and documents he preparred. Those expenses were incurred and, pursuant to the usual practice, paid to Laurel Hill from the escrowed funds before the deposit into court on May 22, 2007 of the interpleaded funds. The Motion to Be Dismissed sought $1,025.00 in costs and attorneys fees incurred after the filing of the complaint. No fees have been sought for the subsequent hearings including three brought by Michael Branden and a fourth recently scheduled by him.

////

////

968AA-P11a

**PLAINTIFF WAS NOT REQUIRED TO DEFAULT THE INTERPLEADER DEFENDANTS; AN INTERPLEADER DEFENDANT IS WITHOUT STANDING TO COMPEL A PLAINTIFF TO SEEK THE DEFAULT OF ANOTHER DEFENDANT**

10. Interpleader is conducted in two stages, and usually involves two sets of pleadings. The first set concerns only the threshold issue: whether the plaintiff is entitled to compel the defendants to interplead their claims. The second set comes into play if and when the defendants are compelled to interplead. These involve the various claims of the defendants, which are usually pleaded as affirmative defenses in the defendants' respective answers to the complaint.[2]

11. In the first stage, the court determines whether the plaintiff is entitled to maintain an interpleader action. If so, it enters an interlocutory decree requiring the adverse claimants to litigate their claims between themselves.[3]

12. After service of the First Amended Complaint, several of the defendants telephoned me, asking for explanations, legal advice, etc., etc, which of course I could not give them. As to some of the smaller claimants, who were particularly angry about the need to incur a $320.00 filing fee and hire a lawyer for a claims of a few hundred or a few thousand dollars, I granted them an extension of time to answer until the date of the motion hearing. Defendant Community Bank asserts that plaintiff was remiss in its duty under San Diego Superior Court Rule 2.1.7. to

---

[2] *City of Morgan Hill v. Brown*, 71 Cal. App. 4th 1114, 1126-27 (1999).

[3] *Id.*

968AA-P11a                                6

request entry of default of these defendants who were granted extensions and did not answer.

13. The manner and procedures by which an interpleader action is actually maintained are not spelled out in *Calif. Civ. Proc. Code* § 386, but rather have developed through case law.[4] Moreover, interpleader is an equitable proceeding,[5] in which fairness predominates. The most elementary principle of interpleader is that the plaintiff is not adverse to anyone. He is a mere stakeholder, unfortunately caught in a dispute among others which he didn't cause and in which he has no interest.

14. The instant complaint sets out no dispute between the plaintiff and any defendant. The plaintiff has no duty to the defendants or any of them to do anything to defeat the interests of any of them. There is no requirement in *Calif. Civ. Proc. Code* § 386.5 that defendants must have answered before the time of the plaintiff's dismissal motion hearing. It is only required that they received notice. The plaintiff has some discretion, as does the court, in requiring an answer from a plaintiff. In general litigation, it is not uncommon to grant extensions of time to respond when there exist extrinsic reasons--sickness, attorney's calendar, client unavailable, settlement discussions, etc.

////

---

[4] *Great-West Life Assurance Co. v. Superior Court of Los Angeles County*, 271 Cal. App. 2d 124, 126 (1969).

[5] *Union Mutual Life Insurance Co. Broderick*, 196 Cal. 497, 502; *Williams v. Gilmore*, 51 Cal. App. 2d 684, 689 (1942).

968AA-P11a                      7

15. It is especially reasonable in an interpleader action that the plaintiff not take any action to benefit one defendant over another, especially small dollar claimants. Interpleader is uniquely flexible. As stated in a leading journal article analyzing interpleader,

> If a procedural rule such as the one of interpleader had to answer only for a typical case, most discussions of the rule...would be exercises. Yet life heaves up atypical situations, and from them stem atypical cases about which something has to be done. The issue then is not whether the rule is adequate for ordinary cases, but whether it is supple enough and precise enough to afford fair guidance for disposition of the extraordinary case.... Traditional doctrines concerning interpleader are in a measure inadequate in this sense. More particularly, we find two related weaknesses. First, the formulation of the conditions under which interpleader ought to be allowed is so indefinite as to beget confusion; second, partly because of this confusion, the contemporary judicial resolution of unusual interpleader situations is at times confounded by false doctrinal puzzles.[6]

16. In no other litigation is a defendant entitled to complain to the court that the plaintiff didn't default another defendant. It is particularly inappropriate and overreaching for a defendant in interpleader to seek an advantage over another claimant in this manner.

17. A Court in interpleader, as a court of equity in a unique and flexible proceeding, seeks fairness for all defendants and may accommodate its procedures to fit each particular set of circumstances. Enforcing the rules so strictly as to disadvantage the lesser claimant, the little guy, to the advantage of the bigger dollar claimant, would not reflect that fairness.

---

[6] *Hazard and Moskowitz, An Historical and Critical Analysis of Interpleader*, 52 Calif. L. Rev. 706 (1964).

18. Plaintiff reimbursed itself for its costs in connection with its services as escrow holder in the normal course of its business. In an escrow, a dispute requiring interpleader could arise at any time during the escrow after the escrow company had been paid for its ongoing costs and fees. To require the escrow then to reimburse the fund and deposit those fees into the court would not be consistent with § 386 (and would hardly incentivize escrows to seek the interpleader remedy). Of the $5,755.50 paid to Laurel Hill Escrow, only $1,322.50 was for services related to the anticipated interpleader action.

## CONCLUSION

Notwithstanding the foregoing facts and argument, Laurel Hill Escrow has requested entry of default of several defendants as ordered by the Superior Court judge. Thus the argument serves only to explain and defend plaintiff's actions. Plaintiff acted out of caution and the intention to take no action adverse to or favoring any particular defendant.

I declare under penalty of perjury and under the laws of California and the United States as their interests appear that the foregoing statement is true and correct and was signed by me at San Diego, California on February 19, 2008.

_____
Donald Merkin

968AA-P11a                              9

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
HALL OF JUSTICE
TENTATIVE RULINGS - January 24, 2008**

EVENT DATE: 01/25/2008      EVENT TIME: 10:30:00 AM      DEPT.: C-67
JUDICIAL OFFICER: David B. Oberholtzer

CASE NO.:   37-2007-00066921-CU-MC-CTL

CASE TITLE:  LAUREL HILL ESCROW SERVICES INC VS. IDEVELOPMENT INC

CASE CATEGORY: Civil - Unlimited      CASE TYPE: Misc Complaints - Other

EVENT TYPE:  Motion Hearing (Civil)
CAUSAL DOCUMENT/DATE FILED: Motion - Other, 01/09/2008

Plaintiff Laurel Hill Escrow Services, Inc.'s ("Plaintiff") motion to be dismissed and relieved of liability is continued to February 29, 2008.

Plaintiff has failed to: 1) include all known claimants in this action (i.e. DOE in the IRS), 2) properly serve all known claimants/defendants with the Complaint in Intervention and this motion, 3) provide proof of service to the Court; 4) dismiss parties (presuming dismissal is proper); and/or 5) request entry of default for non-responding creditors/defendants. As such, this motion is continued to correct these procedural deficiencies.

Plaintiff is ordered to file and serve a status report addressing the service issues of each of the named creditor/defendants on or before February 22, 2008.

The Court sets an OSC re: whether or not the $5,577.50 retained by Plaintiff should be deposited with the Court for February 29, 2007. Plaintiff's brief is to be filed on or before February 19, 2008; Defendants' reply briefs are to be filed on or before February 22, 2008.

The CMC is also continued to February 29, 2007. All of the aforementioned hearings are set for 10:30 a.m. in Department 67.

Exh 1

Event ID: 133698          TENTATIVE RULINGS          Calendar No.:
                               Page: 1

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Donald Merkin, Esq., SBN 62121<br>Merkin & Associates, Attorneys<br>4747 Morena Boulevard, Suite 302<br>San Diego, CA 92117<br>TELEPHONE NO. (Optional): 858 454-3244   FAX NO. (Optional): 858 270-1420<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff Laurel Hill Escrow Services, Inc. | 07 SEP 12 PM 2:03<br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>☑ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649 | |
| PLAINTIFF(S)<br>LAUREL HILL ESCROW SERVICES, INC. | JUDGE: Hon. Patricia A.Y. Cowett |
| DEFENDANT(S)<br>IDEVELOPMENT, INC., et al | DEPT: C-67 |
| **CERTIFICATE OF SERVICE**<br>(San Diego Superior Court Rules, Division II, Rule 2.5) | CASE NUMBER<br>37-2007-00066921-CU-MC-CTL |

I certify under penalty of perjury under the laws of the State of California that all defendants named in the complaint of the above-entitled case have either made a general appearance or have been properly and timely served in compliance with San Diego Superior Court Rules, Division II, Rule 2.5.

Date: September 11, 2007

Signature

Donald Merkin, Attorney for Plaintiff
Typed or printed name

NOTES:

If service cannot be effected on all defendants within 60 days of filing the complaint, DO NOT USE THIS CERTIFICATE, but file the form CERTIFICATE OF PROGRESS (SDSC CIV-144) stating the reasons why service has not been effected on all parties and what is being done to effect service.

THE FILING OF A GENERAL APPEARANCE BY A DEFENDANT DOES NOT DISPENSE WITH THE PLAINTIFF'S OBLIGATION TO FILE THIS DOCUMENT.

Exh. 2

SDSC CIV-345(Rev. 8-02)   **CERTIFICATE OF SERVICE**   American LegalNet, Inc.<br>www.USCourtForms.com