Michael Branden
5340 Las Virgenes Road #1
Calabasas, CA 91302
T 818 522-6060

NUNC PRO TUNC
MAY 06 2008

FILED
08 MAY 12 AM 9:23
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ___ DEPUTY

Defendant, In Pro Per.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREL HILL ESCROW SERVICES, INC., a California Corporation,<br><br>Plaintiff<br><br>v.<br><br>MICHAEL BRANDEN, Real Estate Agent<br><br>Defendant | Case No. 08-CV-0301-JLS (JMA)<br><br>**ANSWER OF DEFENDANT MICHAEL BRANDEN TO FIRST AMENDED COMPLAINT IN INTERPLEADER**<br><br>Judge: Jan M. Aldler<br>Court Room: D |

NOW COMES Defendant MICHAEL BRANDEN and herein answers Plaintiff's Verified First Amended Complaint in Interpleader (the "First Amended Complaint"), as follows:

## ANSWER

1. Michael Branden has insufficient information or belief to admit or deny the allegation set forth in paragraph 1 of the First Amended Complaint and on that basis denies all allegations contained therein.

2. Michael Branden lacks sufficient knowledge as to the allegations regarding the claims of others, contained in paragraph 2 of the First Amended Complaint, and

therefore <u>denies</u> these allegations. As to Michael Branden's claim, denoted in the First Amended Complaint as "Michael Branden/Re/Max," Michael Branden admits that he is owed $31,500.00 but denies that the sum is owed jointly with Re/Max as Re/Max has relinquished rights to the said amount.

3. Michael Branden admits the allegation that IDevelopment, Inc. dba A & M Towing (sellers) and Advantage Towing Company, Inc. (buyer) gave plaintiff Laurel Hill escrow $257,645.00 to be held in escrow pending acceptable escrow instructions to be signed by buyer and seller. Michael Branden has insufficient information or belief to admit or deny the remaining allegations of paragraph 3 of the First Amended Complaint and on that basis denies all such allegations contained therein.

4. Michael Branden denies the allegation that no escrow had been opened. Michael Branden has insufficient information or belief to admit or deny the remaining allegations of paragraph 4 of the First Amended Complaint and on that basis denies all such allegations contained therein.

5. Michael Branden admits the allegation set forth in paragraph 5 of the First Amended Complaint.

6. Michael Branden denies the allegation that falsely states that "$30,000.00 more had already been paid directly by the buyer to the seller". Michael Branden admits that Plaintiff told Michael Branden that Plaintiff would file an interpleader action. Michael Branden has insufficient information or belief to admit or deny the remaining allegations of paragraph 6 of the First Amended Complaint and on that basis denies all such allegations contained therein.

7. Michael Branden has insufficient information or belief to admit or deny the allegation set forth in paragraph 7 of the First Amended Complaint and on that basis denies all allegations contained therein.



**BUSINESS PURCHASE AGREEMENT AND
JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form BPA, Revised 10/03)

Date April 29, 2007, at _____, San Diego, California.

1. **OFFER:**
   A. THIS IS AN OFFER FROM Advantage Towing Inc., by Ayman Arakat ("Buyer").
      ☐ Individual(s), ☐ A Partnership, ☒ A Corporation, ☐ An LLC, ☐ An LLP, ☐ Other _____
   B. THE BUSINESS TO BE ACQUIRED is known as A & M Towing, 1473 Morena Blvd., situated in San Diego, County of San Diego, California, ("Business"), described as Road side service and towing.
   C. THE PURCHASE PRICE offered is Two Hundred Twenty-Six Thousand One Hundred Forty-Five Dollars $ 226,145.00
   D. INVENTORY valued at approximately $ _____, including work in progress, is included in the purchase price.
   E. CLOSE OF ESCROW shall occur on _____ (date) (or ☒ 30 / mutual Days After Acceptance).

2. **PAYMENT OF PURCHASE PRICE:** Obtaining the loans below is a contingency of this Agreement unless: (i) 2F is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of .................................. $ 226,145.00
      to the agent submitting the offer (or to ☐ _____ ), by personal check
      (or ☐ _____ ), made payable to _____
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      or ☐ _____ , with
      Escrow Holder (or ☐ into Broker's trust account).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ..... $ _____
      within _____ Days After Acceptance, or ☐ _____
   C. FIRST LOAN IN THE AMOUNT OF ............................................. $ _____
      NEW First Deed of Trust in favor of ☐ lender, ☐ seller, ☐ Small Business Administration, secured by Buyer's own real property or, if real property is included in the sale, then by that real property, payable at maximum interest of _____% fixed rate or _____% initial adjustable rate with a maximum interest rate of _____%, balance due in _____ years, amortized over a period of not less than _____ years (if checked: ☐ and with a margin not to exceed _____%, tied to the following index: _____).
      Buyer shall pay loan fees/points not to exceed _____
      Additional terms: _____

   D. SECOND LOAN IN THE AMOUNT OF ............................................. $ _____
      NEW Second Deed of Trust in favor of ☐ lender, ☐ seller, ☐ Small Business Administration, secured by Buyer's own real property (or ☐ _____ ), payable at maximum interest of _____% fixed rate, or _____% initial adjustable rate with a maximum interest rate of _____%, balance due in _____ years, amortized over a period of not less than _____ years (if checked: ☐ and with a margin not to exceed _____%, tied to the following index: _____).
      Buyer shall pay loan fees/points not to exceed _____
      Additional terms: _____

   E. LOAN SECURED BY BUSINESS ASSETS IN THE AMOUNT OF .......................... $ _____
      Evidenced by a note in favor of Seller secured by the assets of the Business, together with a security agreement in the usual and customary form covering all assets of the Business, and a UCC-1 filing to be filed with the Secretary of State, which shall include proceeds of collateral, in ☐ first or ☐ second position, or ☐ _____ , payable at maximum interest of _____% fixed rate, or _____% initial adjustable rate with a maximum interest rate of _____%, amortized over a period of not less than _____ years, and all due in not less than _____ years (if checked ☐ and with a margin not to exceed _____%, tied to the following index: _____). Buyer shall have the right, at Buyer's expense, to conduct a valuation of the assets within the time specified in paragraphs 9 and 26. If the assets' value is less than the amount of the loan provided for in this paragraph 2E, then the difference between the amount of the loan specified in this paragraph 2E, less the value of the assets, shall become an unsecured loan.
   F. ☒ ALL CASH OFFER (if checked) No loan is needed to purchase the Business. Buyer shall, within 7 (or _____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
   G. ADDITIONAL FINANCING TERMS: _____ $ _____
      Buyer to deposit $ 226,145.00 in escrow upon opening of escrow in cashiers
      check payable to Laurel Hill Escrow.
      _____
      _____
      _____

Buyer's Initials ( AA ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1997-2003, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
BPA REVISED 10/03 (PAGE 1 OF 8)

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 1 OF 8)**

Agent: MICHAEL BRANDEN   Phone: (818) 519-5556   Fax: (818) 519-5557   Prepared using WINForms® software
Broker: RE/MAX All Cities   9454 Wilshire Boulevard #150, Beverly Hills CA 91212

Property Address: A & W Towing, 1473 Morena Blvd., San Diego                    Date: April 25, 2007

H. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of ..... $ _____
   to be deposited with Escrow Holder within sufficient time to close escrow.
I. PURCHASE PRICE (TOTAL): ........................................................................... $ 226,145.00

> CAUTION: Obligations secured by mixed collateral (i.e., both personal and real property) are subject to complex rules and court decisions under the California Civil Code, Commercial Code and the Code of Civil Procedure. Buyer and Seller are strongly cautioned to consult legal counsel in connection with the securing and enforcement of any such obligations.

J. SELLER FINANCING: For any Seller financing designated above, which is to be secured by real property in favor of Seller, Buyer is to execute a note secured by a deed of trust in favor of Seller on the terms and conditions set forth in the attached addendum (C.A.R. Form SFA).

K. LOAN APPLICATIONS: Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loans specified above.

L. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2K) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.

M. LOAN CONTINGENCY REMOVAL: (I) Within 17 (or ☐ _____ ) Days After Acceptance Buyer shall, as specified in paragraph 29, remove the loan contingency or cancel this Agreement; OR (II) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.

3. CLOSING AND POSSESSION:
   A. Possession shall be delivered to Buyer at _____5_____ ☐ AM ☒ PM, ☒ on the date of Close Of Escrow, ☐ on _____
      or ☐ no later than _____ Days After Close Of Escrow. If Seller also owns the real property upon which the Business operates and transfer of title to the real property and possession of the Business do not occur at the same time, Owner and Buyer are advised to: (i) enter into a written agreement regarding possession; and (ii) consult with their insurance and legal advisors or other appropriate professional(s).
   B. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.
   C. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems and alarms.

4. ESCROW HOLDER: ☒ Buyer ☐ Seller shall pay escrow fees _____
   Escrow Holder shall be Central Hill Escrow

5. FORM OF OWNERSHIP: The Business shall be owned in the form designated in Buyer's escrow instructions. THE MANNER OF TAKING TITLE AND THE FORM OF OWNERSHIP OF THE BUSINESS MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

6. ASSETS TRANSFERRED: With the exception of cash or cash equivalents on deposit in any financial institution, and assets excluded below, Buyer is purchasing all assets of the Business, including but not limited to: Inventory for sale, machinery, furniture, fixtures and other equipment, leasehold improvements, transferable government licenses and permits, customer lists, fictitious business names, trade names and trademarks, logos, copyrights and patents, signs and advertising materials, telephone and fax numbers, web sites URL names, e-mail addresses, accounts receivable, vendor lists and catalogs, goodwill, agreements not to compete, franchise agreements, distribution rights, employee lists and information, computer and customer software, and customer deposits. All items transferred that are leased are subject to the terms of existing lease(s)
☒ Other See Addendum #1
Excluded asset: #1 #1, 1996 Nissan Kingcab, 1N6SD16Y8TC387930H, #4, 2000 Int'l 4700, 1HTSCAB2XH270567234500,
#5, 1996 Mitsubishi FM 210, JW 6G01B0TL0020082700DP8779688... #11, 1997 GMC 3500 HD,
1GDCC34P1V1062951(400V15R49355... #14, 2000 Mitsubishi FE-SP, JL6BBF1H001A24400F872681788

7. LIABILITIES TRANSFERRED: Buyer is NOT purchasing any liabilities of the Business, EXCEPT those items checked below:
   A. ☐ Accounts payable, per attached list.
   B. ☐ Service, maintenance and advertising agreements, per attached list.
   C. ☐ Other: _____

8. ☐ INVENTORY (If checked):
   A. Buyer's acceptance of inventory is a contingency of this Agreement. Buyer shall have the right, at Buyer's expense, within the time specified in paragraph 25, to conduct a physical inventory and, in writing, remove the contingency or cancel this Agreement.
   B. Buyer has the right to confirm the inventory within 5 (or ☐ _____ ) Days Prior to Close Of Escrow. The purchase price shall be adjusted to reflect the remaining inventory. The adjustment is to be added to or subtracted from the ☐ cash down payment; or ☐ seller financing.

Copyright © 1996-2002 CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 2 OF 8)

Buyer's Initials ( AA ) ( )
Seller's Initials ( M ) ( S )
Reviewed by _____ Date _____

BUSINESS PURCHASE AGREEMENT (BPA PAGE 2 OF 8)            T60I-7202.ZFX

Property Address: B & N Towing, 1673 Morena Blvd., San Diego          Date: April 25, 2007

**9. SELLER DISCLOSURE; BUYER INVESTIGATION:**
Seller shall, within the time specified in paragraph 25, provide to Buyer, or to Buyer's counsel, accountant or other designated representative, the lists of items or documents, or copies thereof, for the items checked below. For each item, as applicable, Seller shall include a statement of whether the item is owned or leased and whether Seller has any legal, proprietary interest, or intellectual property rights in, or restrictions on, the item. Buyer, within the time specified in paragraph 25, shall then investigate the items provided to Buyer and take the action specified in paragraph 26.

- ☐ Inventory, including work in progress
- ☐ Machinery
- ☒ Furniture, fixtures and other equipment
- ☐ Other personal property
- ☐ Leasehold improvements
- ☐ Government licenses and permits
- ☐ Customer lists
- ☐ Fictitious business name statements
- ☒ Trade names and trademarks
- ☒ Logo
- ☐ Copyrights and patents
- ☐ Schedule of accounts receivable
- ☐ Business appraisal
- ☒ Other assets: Office furniture belonging to sellers located at 1673 Morena Blvd., San Diego, CA.
- ☐ Schedule of accounts payable
- ☐ Other liabilities: _____
- ☐ Employee estoppel certificates
- ☐ Sales tax returns for the years .......... _____ to _____
- ☐ Federal and state income tax returns for the years ....... _____ to _____
- ☐ Financial statements for the years .......... _____ to _____
- ☐ Employment withholding returns for the years .......... _____ to _____
- ☒ Signs and advertising materials
- ☐ Telephone and fax numbers
- ☐ Websites, URL names and e-mail addresses
- ☐ Vendor lists and catalogs
- ☒ Goodwill
- ☐ Agreements not to compete
- ☐ Franchise agreements
- ☐ Distribution rights
- ☐ Employee lists and information
- ☐ Computer and customer software
- ☐ Customer deposits
- ☐ Lease
- ☐ Service, maintenance and advertising agreements
- ☐ Proposed allocation of purchase price among assets

SELLER REPRESENTS THAT: (i) THE BOOKS AND RECORDS THAT OWNER PROVIDES ARE THOSE MAINTAINED IN THE ORDINARY AND NORMAL COURSE OF BUSINESS; AND (ii) FEDERAL AND STATE TAX RETURNS THAT SELLER PROVIDES ARE COPIES OF THOSE FILED WITH THE APPLICABLE GOVERNMENTAL AGENCIES.

**10. CONSULTING AND TRAINING:** Seller shall consult with Buyer to show Buyer methods used in operating the Business. Seller shall provide consulting services for a period of ____0____ Days After Close Of Escrow at no cost to Buyer, which services shall not exceed a total of ____0____ hours. Seller shall not be responsible for training Buyer in the basics of operating a business of the type being sold pursuant to this Agreement, but only to start Buyer in the business, as determined by Seller, of operating this type of business. **NOTE TO BUYER: IF YOU ARE NOT ALREADY TRAINED IN THIS TYPE OF BUSINESS, YOU ARE STRONGLY ADVISED TO SEEK TRAINING.**

**11.** ☒ **AGREEMENT NOT TO COMPETE** (if checked): As a material part of the consideration of the sale, Seller agrees not to operate or engage in, directly or indirectly, whether as a principal, agent, manager, employee, owner, member, partner, stockholder, director or officer of a corporation, trustee, consultant, or any other capacity whatsoever, any business the same as, or substantially similar to, or in competition with the Business within a radius of ____1____ miles from the current location of the Business (or ☐ _____ ) for a period of ____5____ year(s) from the date of final transfer of the Business, so long as Buyer, or Buyer's successor-in-interest, is operating the Business in said area.

**12. LEASE** (Check applicable items): The sale is contingent upon Buyer obtaining, within 21 (or ☐ _____ ) Days After Acceptance the assignment, new lease, option to extend, sublease or other lease as indicated below. Buyer shall submit an application for such lease to Seller's landlord or Seller, as applicable, within 15 (or ☐ _____ ) Days After Acceptance.
- A. ☐ An assignment of Seller's existing lease.
- B. ☐ A new lease with Seller's landlord, on terms acceptable to Buyer, to become effective concurrently with the Close Of Escrow.
- C. ☐ An option to extend Seller's present lease for an additional _____ year(s), on terms acceptable to Buyer and Seller's landlord.
- D. ☐ A sublease with Seller, on terms acceptable to Buyer, to become effective concurrently with the Close Of Escrow. Buyer and Seller are advised that such sublease may require notice to or approval of Seller's landlord.
- E. ☒ OTHER: The sale is not contingent upon buyer assuming land lease. Buyer is not assuming the lease.

**13.** ☐ **PURCHASE OF REAL PROPERTY** (If checked): The sale is contingent upon Buyer's ability to purchase, concurrently with the Close Of Escrow, the real property in which the Business operates. A separate Real Property Purchase Agreement is required (C.A.R. Form CPA).

**14. LICENSES:**
A. **LIQUOR:** If transfer of a liquor license is included in this sale, Seller shall comply with the Alcoholic Beverage Control Act concerning such transfer. Escrow shall not close, and no funds shall be transferred to Seller, until Escrow Holder is advised by the State of California Department of Alcoholic Beverage Control that the license transfer has been approved. The costs of such transfer shall be paid _____.
B. **OTHER:** (If checked) This sale is contingent upon Buyer's obtaining, prior to the Close Of Escrow, the license(s) indicated below. Buyer shall apply for such license(s) within 15 (or ☐ _____ ) Days After Acceptance:
  1. ☐ City license: _____
  2. ☐ State license: _____
  3. ☒ Other: This sale is not contingent upon buyer/ Advantage Towing for Ayman Arakat by receiving contract from Automobile Club of Southern California.

**15. FRANCHISE:** If the Business is a franchise, in addition to being subject to Buyer's acceptance of the terms of franchise as provided in paragraph 3, the sale is also contingent upon Franchisor's acceptance of Buyer.

**16. SALES AND USE TAX:** Buyer shall pay any sales or use tax payable as a result of the sale under any law and shall furnish Seller with Resale Certificates for any items bought for resale.

Buyer's Initials ( AA ) ( __ )
Seller's Initials ( SV ) ( __ )

Reviewed by _____ Date _____

Copyright © 1989-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 3 OF 9)
BUSINESS PURCHASE AGREEMENT (BPA PAGE 3 OF 9)
TA037202.ZFX

Property Address: _A & M Donuts, 1471 Rhodes Blvd., San Diego_    Date: _April 29, 2002_

17. **PRORATIONS:** Personal property taxes, business taxes, rents, interest, insurance acceptable to Buyer, and prepaid deposits shall be prorated as of Close Of Escrow (or ☐ _____).

18. **TAX CLEARANCES:** Seller shall deliver to Escrow Holder proof that city (if applicable), state and federal income tax withholdings are current. Amounts withheld but not yet payable will be transferred in escrow or credited to Buyer. Seller shall also deliver to Escrow Holder any clearance documents available from the State Board of Equalization or Employment Development Department regarding S.D.I., unemployment insurance and FICA withholdings. No funds shall be released from escrow before such delivery.

19. **NOTICES OF VIOLATIONS:** Seller represents that, to the best of Seller's knowledge, no notices of violations of federal, state or local statute(s), law(s) or regulation(s) exist or are filed or issued, that affect the operation of the Business, including any such notices regarding the real property in which the Business is situated ("Notices") EXCEPT: _____

    If prior to Close Of Escrow, Seller receives or becomes aware of any Notices filed against or affecting the Business, Seller shall immediately notify Buyer.

20. **BULK TRANSFER:** Seller shall comply with the Bulk Sales provision of Division 6 of the Uniform Commercial Code, Bulk Transfer Section, as the law applies within the Seller's state.

21. **TITLE:** Seller shall furnish to Buyer bills of sale and other instruments of transfer or assignment necessary to carry out this Agreement.

22. **LIENS; ENCUMBRANCES; RESTRICTIONS:** Seller warrants that, to the best of Seller's knowledge, there are no undisclosed liens, encumbrances or restrictions upon the Business.

23. **OPERATION OF BUSINESS DURING ESCROW:** During the escrow period Seller shall: (i) operate the Business diligently and in substantially the same manner as prior to this offer; (ii) maintain the goodwill of the Business; (iii) keep all equipment and personal property in normal working order; and

24. **SELLER REPRESENTATIONS:** Seller's representations and warranties set forth herein, or in any written statements delivered to Buyer, shall be true and correct at Close Of Escrow, and shall survive the transfer of ownership of the Business.

25. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may be extended, altered, modified or changed only by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form RRCR).

    A. **SELLER HAS:** 7 (or ☒ __7__ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraph 1.

    B. **BUYER SHALL,** within the times set forth below, take the specified action and, in writing, either remove the applicable contingency or cancel this Agreement.
    (1) **BUYER HAS:** 17 (or ☒ __7__ ) Days After Acceptance to complete all buyer investigations, unless otherwise agreed in 25B(2); approve all disclosures, reports, and review of reports and other applicable information, for which Buyer is responsible or which Buyer receives from Seller; and approve all matters affecting the Business.
    (2) ☐ (If checked) BUYER HAS: 30 (or ☒ _____ ) Days After Acceptance to complete geologic, soil and environmental inspections.
    (3) By the end of the times specified in 25B(1) and (2) (or 2M for loan contingency; 12 for lease contingency; 13 for purchase of property contingency; 14 license contingency; or 15 franchise contingency), Buyer shall remove, in writing, the applicable contingency (C.A.R. Form RRCR) or cancel this Agreement. However, if Seller is unable to deliver any government-mandated inspections or reports required as a condition of closing within the time specified in 25A, Buyer has 5 (or ☐ _____ ) Days After receipt of such inspection or report or the time specified in 25B(1), whichever is later, to, in writing, remove the applicable contingency or cancel this Agreement.

    C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**
    (1) **Seller right to Cancel: Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in the Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.
    (2) Even after the expiration of the time specified in 25B(1), Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 25C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 25C(1).
    (3) **Seller right to Cancel: Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2K; (iv) if Buyer fails to provide verification as required by 2F or 2L; or (v) if Seller reasonably disapproves of the verification provided by 2F or 2L. Seller is not required to give Buyer a Notice to Perform regarding Close Of Escrow.
    (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be Signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 25C(3) obligation.

    D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all buyer investigations and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

    E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, Judicial decision or arbitration award.

Copyright © 1996-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 4 OF 8)

Buyer's Initials ( AA )( _____ )
Seller's Initials ( M )( SA )

Reviewed by _____ Date _____


**BUSINESS PURCHASE AGREEMENT (BPA PAGE 4 OF 8)**

Property Address: _A.A.M. Dunlop, 1471 Morena Blvd., San Diego_  Date: _April 25, 2007_

26. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (I) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (II) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (III) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Business; and (IV) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Business.

27. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Business is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

28. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement.

Buyer's Initials _AA_ / _____    Seller's Initials _____ / _GJ_

29. **DISPUTE RESOLUTION:**

  A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 29B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

  B. **ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 29B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with experience in the purchase and sale of a business, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

  (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

  (3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 29A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL, BINDING ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL, BINDING ARBITRATION.**"

Buyer's Initials _AA_ / _____    Seller's Initials _____ / _____

Copyright © 1999-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 5 OF 9)

Buyer's Initials ( _AA_ )( _____ )
Seller's Initials ( _M_ )( _GJ_ )
Reviewed by _____   Date _____

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 5 OF 9)**

TG007202.ZFX

Property Address: A & M Towing, 1473 Morena Blvd., San Diego       Date: April 29, 2007

30. **MLS / PROPERTY DATA SYSTEM:** If Broker is a participant of a multiple listing service ("MLS") or property data system ("PDS"), Broker is authorized to report the terms of this transaction to any such MLS or PDS, to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.
31. **EQUAL OPPORTUNITY:** The Business is sold in compliance with federal, state and local anti-discrimination Laws.
32. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller except as provided in paragraph 29A.
33. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.
34. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.
35. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.
36. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.
37. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals, and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents. If the originals are in the possession of the furnishing party.
38. **GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.
39. **AUTHORITY:** Any person(s) signing this Agreement represent(s) that such person(s) has full power and authority to bind that person's principal, and that the designated Buyer and Seller have full authority to enter into and perform this Agreement. Entering into this Agreement and the completion of the obligations pursuant to this Agreement, do not violate any Articles of Incorporation, Articles of Organization, Bylaws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.
40. **OTHER TERMS AND CONDITIONS,** including attached supplements:
    ☐ Seller Financing Addendum and Disclosure (C.A.R Form SFA)

_Seller to pay Jimmy Johnson Kearny Mesa Chrysler for repairs made to unit #17_

_Buyer to take possession of tow trucks and Battery van upon assumption of loan, transfer of titles and proof of insurance. Upon assumption of loan, transfer of titles and proof of insurance buyers deposit passes to sellers and becomes non refundable. Sale price is final without further adjustments._

_Buyer pays Agents commission of $27,500.00 dollars in cashiers check payable to Laurel Hill Escrow. Buyer instructions to escrow officer are as follows: Escrow to release half of agents commission upon opening of escrow to Michael Brandon. Remainder of agents commission to be held in escrow until close of escrow._

41. **RISK OF LOSS:** Any risk of loss to the Business shall be borne by Seller until ownership has been transferred to Buyer.
42. **DAMAGE OR DESTRUCTION:** If the Business or real property in which the Business is situated is destroyed or materially damaged prior to Close Of Escrow, then, on demand of Buyer, any deposit made by Buyer shall be returned to Buyer and this Agreement shall terminate.
43. **INDEMNIFICATION:** Unless otherwise expressly provided herein, upon completion of sale, Seller agrees to indemnify, defend and hold Buyer harmless from all liability resulting from loss, damage or injury to persons or property in any manner arising out of or incident to the operation of the Business prior to transfer to Buyer. Buyer agrees to indemnify, defend and hold Seller harmless from all liability resulting from loss, damage or injury to persons or property in any manner arising out of or incident to the operation of the Business after transfer to Buyer.
44. **NOTICES:** Whenever notice is given under this Agreement, each notice shall be in writing and shall be delivered personally, by facsimile or by mail, postage prepaid. Notice shall be delivered to the address set forth below the recipient's signature of acceptance. Either party may change its notice address by providing notice to the other party.

Copyright © 1989-2002, CALIFORNIA ASSOCIATION OF REALTORS, INC.
BPA REVISED 10/02 (PAGE 8 OF 9)

Buyer's Initials ( A.A. )( _____ )
Seller's Initials ( _____ )( S.M. )
Reviewed by _____ Date _____



**BUSINESS PURCHASE AGREEMENT (BPA PAGE 8 OF 9)**

T60872U2.ZFX

Property Address: _A & M Towing, 1422 Morena Blvd._ _San Diego_ _____ Date: _April 25, 2007_

**45. DEFINITIONS:** As used in this Agreement:
  A. "**Acceptance**" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
  B. "**Agreement**" means the terms and conditions of this accepted Business Purchase Agreement and any accepted counter offer and addenda.
  C. "**C.A.R. Form**" means the specific form referenced or another comparable form agreed to by the parties.
  D. "**Close Of Escrow**" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
  E. "**Copy**" means copy by any means including photocopy, NCR, facsimile and electronic.
  F. "**Days**" means calendar days, unless otherwise required by Law.
  G. "**Days After**" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
  H. "**Days Prior**" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
  I. "**Electronic Copy**" or "**Electronic Signature**" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
  J. "**Law**" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
  K. "**Notice to Buyer to Perform**" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 26C(4)) or until the previously agreed time limit, whichever occurs last, to remove a contingency or perform as applicable.
  L. "**Signed**" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
  M. **Singular and Plural** terms each include the other, when appropriate.

**46. AGENCY:**
  A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Business. Seller understands that Broker representing Seller may also represent other sellers with competing businesses of interest to this Buyer.
  B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
  Listing Agent _____ _Remax OTB Michael Brandon_ _____ (Print Firm Name) is the agent
  of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
  Selling Agent _____ (Print Firm Name) (if not same
  as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**47. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
  A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 8B, 13, 14A, 17, 18, 20, 21, 25E, 34, 40, 44, 45, 47, 52, 53A, 54 and paragraph D of the section titled Real Estate Brokers on page 9. If a Copy of the separate compensation agreement(s) provided for in paragraph 50 or 53A, or paragraph D of the section titled Real Estate Brokers on page 9 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
  B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☒ _1_ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
  C. Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 50, 53A and paragraph D of the section titled Real Estate Brokers on page 9. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 50 and 53A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.
  A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be
  D. delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyers Initials ( _A_ )( ____ )
Sellers Initials ( _M_ )( _GY_ )

Copyright © 1996-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 7 OF 9)

Reviewed by _____ C/O _____

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 7 OF 9)**

T60072 02.ZFX

Property Address: A & M Towing, 1673 Hornet Blvd., San Diego                              Date: April 25, 2007

48. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement in connection with any act relating to the Business, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

49. **SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: (I) Brokers do not decide what price Buyer should pay or Seller should accept; (II) Brokers do not guarantee the performance or repairs of others who have provided services or products to Buyer or Seller; and (III) they will seek legal, tax, insurance, title and other assistance from appropriate professionals.

50. **BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

51. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Business on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Business for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

52. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____ Michael Branden _____ who is authorized to receive it by 5:00 PM on the third calendar day after this offer is signed by Buyer, (OR, if checked ☐ by April 26, 2007 _____ (date), at _____ 11 _____ ☐ AM ☒ PM)

Buyer _____ Ayman Arakat _____
By _____ Arakat _____
Name Printed _____ Advantage Towing Inc. _____                     Date 4/26/07
Address _____
Telephone _____ Fax _____ City _____ E-mail _____ State _____ Zip _____

Buyer _____
By _____
Name Printed by Ayman Arakat _____                                     Date _____
Address _____
Telephone 619-188-0170 Fax 619-280-4988 E-mail AArakat@cox.net
Notice Address, if Different _____

53. **BROKER COMPENSATION FROM SELLER:**
  A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
  B. If escrow does not close, compensation is payable as specified in that separate written agreement.

54. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of this Business, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Business on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (If checked) SUBJECT TO THE ATTACHED COUNTER OFFER, DATED _____

Seller _____
By _____
Name Printed _____ Vartan Yacoubian _____                              Date 4/26/07
Address _____
Telephone (818)_____-_____ Fax _____ City _____ E-mail Vyacoubian@sbc.... State _____ Zip _____

Seller _____
By _____
Name Printed _____ Shireen Yacoubian _____                            Date 4/26/07
Address _____
Telephone _____ Fax _____ City _____ E-mail _____ State _____ Zip _____
Notice Address, if Different _____

( ____/____ ) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent
  (Initials)   on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

Copyright © 1988-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 8 OF 8)

Buyer's Initials ( AA ) ( )
Seller's Initials ( VY ) ( SY )
Reviewed by _____ Date _____

BUSINESS PURCHASE AGREEMENT (BPA PAGE 8 OF 8)

Property Address: <u>A & M Towing, 1473 Morena Blvd., , San Diego</u>                    Date: <u>April 25, 2007</u>

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 46 above.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS or PDS, provided Cooperating Broker is a Participant of the MLS or PDS in which the Property is offered for sale or a reciprocal MLS or PDS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _____
By _____  Date _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) <u>Remax OTB Michael Branden</u>
By _____  Date _____
Address <u>23586 Calabasas road, 105</u>  City <u>Calabasas</u>  State <u>CA</u>  Zip <u>91302</u>
Telephone <u>(818)522-6060</u>  Fax <u>(818)871-0908</u>  E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ).
counter offer numbers _____ and _____, any supplemental escrow instructions and the terms of Escrow Holder's general provisions, and agrees to act as Escrow Holder subject to paragraph 47 of this Agreement.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate.  License # _____

---

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

   Published by the
California Association of REALTORS®        Reviewed by _____ Date _____   

BPA REVISED 10/02 (PAGE 9 OF 9)
                    BUSINESS PURCHASE AGREEMENT (BPA PAGE 9 OF 9)                    T6067202.ZFX



**CALIFORNIA ASSOCIATION OF REALTORS®**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS**
(As required by the Civil Code)
(C.A.R. Form AD, Revised 10/04)

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
**To the Seller:**
A Fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller.
**To the Buyer and the Seller:**
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
**To the Buyer:**
A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer.
**To the Buyer and the Seller:**
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.

This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on the reverse hereof. Read it carefully.

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK OR A SEPARATE PAGE.**

☑ BUYER ☐ SELLER _____ Date April 25, 2007 ___ Time _____ ☐ AM ☐ PM
Advah Corp _____

☐ BUYER ☑ SELLER _____ Date April 25, 2007 ___ Time 2:30 ☐ AM ☑ PM
Idevelopment, Inc. _____

AGENT Remax ___, Michael Branden _____ By _____ Date 04/23/2007

THIS FORM SHALL BE PROVIDED AND ACKNOWLEDGED AS FOLLOWS (Civil Code §2075.14):
• When the listing brokerage company also represents Buyer, the Listing Agent shall have one AD form signed by Seller and one signed by Buyer.
• When Buyer and Seller are represented by different brokerage companies, the Listing Agent shall have one AD form signed by Seller, and the Buyer's Agent shall have one AD form signed by Buyer and one AD form signed by Seller.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

AD REVISED 10/04 (PAGE 1 OF 1)

Reviewed by _____ Date _____

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS (AD PAGE 1 OF 1)**

Agent: MICHAEL BRANDEN    Phone: (818) 906-8668    Fax: (818) 990-5591
Broker: REMAX All Cities    9454 Wilshire Boulevard #150, Beverly Hills CA 91212

Prepared using WinForms® software



**CALIFORNIA ASSOCIATION OF REALTORS®**

# ADDENDUM
(C.A.R. Form ADM, Revised 10/01)

No. 1

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☒ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ other

dated April 24, 2007, on property known as A & M Towing

in which Advantage Towing, Inc., Fox Aymen Arrekat is referred to as (Buyer/Tenant)

and Development, Inc. V.Yacoubian, S.Yacoubian is referred to as ("Seller/Landlord").

All units is to be assumed on an as is basis.

The following service units are to be assumed by buyer:

Van 2003 GMC Express 1GCHG35V131180451n/aBeck Van7N01722
Unit #7 2003 GMC 3500 1GDJC34123E182671110002L7N03730
Unit #13 2004 Mitsubishi FE JL6BBE1594J011225144COT37J65895
Unit #15 2003 Mitsubishi FM210 JW6CPG1563L004487173000F37E44896
Unit #16 2003 Mitsubishi FM211 JW6CCR1G73L004630178000Com7W47314
Unit #17 2004 GMC3500 1GDJC39104E120400?11400W17N88476
Unit #18 2004 Mitsubishi FM211 JL6CFJ1504K008414178000R7N67477
Unit #19 2004 Ford F450 1FDXF46P74EB010014300Eagle7W73249
Unit #20 2005 Mitsubishi FE145 JL6BBG1S25K007980145000R7N68870
Unit #21 2004 Isuzu NRR JALE5B16597300894180005F97V16847
Unit #22 2006 Mitsubishi FE180 JL6CCD1S46K00295117900WL8836270

Total Monthly payment for all units above is $11,000.00

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date April 24, 2007
Buyer/Tenant [signature] Advantage Towing, Inc.
Buyer/Tenant Fox Aymen Arrekat

Date April 24, 2007
Seller/Landlord [signature] IDevelopment, Inc. V.Yacoubian
Seller/Landlord S.Yacoubian

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

Reviewed by _____ Broker or Designee _____ Date _____

ADDENDUM (ADM-11 PAGE 1 OF 1)

RE/MAX All Cities    9454 Wilshire Boulevard #450, Beverly Hills CA 91212
Phone: (818) 996-1550    Fax: (818) 996-1550    MICHAEL BRANDEN