1 STEPHEN F. LOPEZ, ESQ. (SBN 125058)
GERACI & LOPEZ
2 Attorneys at Law
13355 Midland Road
3 Suite 140
Poway, California 92064
4 Telephone: (619) 231-3131
Direct:        (858) 679-8151
5 Facsimile:  (619) 374-1911

**FILED**

JUN 0 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

6 Attorneys for Defendant/Cross Complainant ADVANTAGE TOWING COMPANY

7

8              SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN DIEGO

9                                CENTRAL BRANCH

10

| | |
|---|---|
| 11 LAUREL HILL ESCROW, a California Corporation, | ) Case Number |
| 12 | ) **37-2007-00066921-CU-MC-CTL** |
| 13 Plaintiff | ) |
| | ) **CROSS-COMPLAINT FOR BREACH** |
| 14 v. | ) **OF CONTRACT AND RESCISSION** |
| 15 IDEVELOPMENT INC., a California corporation dba A & M TOWING; et. al. | ) Complaint Filed:        May 22, 2007 |
| | ) FC Judge:        Patricia W. A. Cowett |
| 16 Defendants | ) |
| 17 ———————————————— | ) |
| 18 ADVANTAGE TOWING COMPANY INC., a California corporation, | ) |
| 19 Cross-Complainant | ) |
| 20 v. | ) |
| 21 IDEVELOPMENT INC., a California corporation and ROES 1 to 10, inclusive, | ) |
| 22 | ) |
| 23 Cross-Defendants | ) |
| ———————————————— | ) |

24        COMES NOW Cross-Complainant ADVANTAGE TOWING COMPANY INC. and

25 complains as follows:

26 ///

27 ///

28 ///

Laurel Hill v. Idevelopment                        1                        Cross Complaint

## GENERAL ALLEGATIONS

1. At all times mentioned herein, Cross-Complainant, ADVANTAGE TOWING COMPANY INC., ("CROSS-COMPLAINANT") is and was a California corporation in good standing doing business in the City of San Diego, County of San Diego, State of California.

2. CROSS-COMPLAINANT is informed and believes and thereon alleges that all times mentioned herein, CROSS-DEFENDANT, IDEVELOPMENT is a California corporation Company doing business in the City of San Diego, County of San Diego, State of California as A & M Towing.

3. The transactions that gave rise to this action took place in the City of San Diego, County of San Diego, State of California.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of CROSS-DEFENDANTS ROES 1 through 10, inclusive are unknown to CROSS-COMPLAINANT and CROSS-COMPLAINANT, therefore sues said CROSS-DEFENDANTS by such fictitious names. CROSS-COMPLAINANT will seek leave of court to amend this cross complaint to show their true names and/or capacities when the same have been ascertained. CROSS-COMPLAINANT is informed, believes and thereupon alleges that each of the ROE CROSS-DEFENDANTS is, in some manner, legally responsible for the events and happenings herein set forth and which proximately caused the injury and damages to CROSS-COMPLAINANT as herein alleged.

5. CROSS-COMPLAINANT is informed and believes and thereon alleges that at all times mentioned herein, CROSS-DEFENDANTS, and each of them, were employees, agents and/or servants of the other CROSS-DEFENDANTS, and in doing the acts alleged herein, were acting with the course and scope of such agency, employment and/or servancy.

///

///

///

///

I.

## FIRST CAUSE OF ACTION

(Breach of Contract)

6. CROSS-COMPLAINANT refers to the allegations contained in paragraphs 1 through 5 of this Cross-Complaint and incorporates those allegations herein as if set forth in full.

7. On or about April 26, 2007, CROSS-COMPLAINANT and CROSS-DEFENDANTS entered into a written contract concerning for the purchase of a towing business for the sum of Two Hundred and Fifty Seven-Thousand Six Hundred and forty-five Dollars. ($257,645.00) ("Subject Contract") Under the terms of the Subject Contract, CROSS-COMPLAINANT was to purchase from CROSS-DEFENDANTS, and CROSS-DEFENDANTS were required to transfer to CROSS COMPLAINANT ownership of a towing company and its assets free and clear of all liens except those agreed to (Subject Business). Escrow was to close within 30 days of acceptance of the agreement, with a duly completed bulk sale notice. A copy of the contract is attached here and marked as Exhibit "A", and incorporated herein by reference.

8. CROSS-COMPLAINANT has performed all conditions, covenants, and promises required of it to be performed on its part in accordance with and under the terms and conditions of said the Subject Contract including the deposit in escrow of the purchase price.

9. CROSS-DEFENDANTS, and each of them, breached said contract by failing to close escrow within 30 days, failing to transfer title to the assets sold to CROSS-COMPLAINANT and failure to remove any and all liens and secured interests on the assets of the Subject Business except those agreed to.

10. As a direct and proximate result of said breach of contract, CROSS-COMPLAINANT has been damaged in an amount in excess of $257,645.00 subject to proof at the time of trial.

///

///

///

## II.

## SECOND CAUSE OF ACTION

### (Rescission)

11. CROSS COMPLAINANT refers to the allegations contained in paragraphs 1 through 10 of this Cross-Complaint and incorporates those allegations herein as if set forth in full.

12. As a result of CROSS-DEFENDANTS failure to deliver to CROSS-COMPLAINANT the title and ownership of the Subject Business under the terms and conditions agreed, there has been a failure of consideration as provided in California Civil Code section 1689(b)(2). These facts constitute grounds for rescission of the contract.

13. By way of the filing of this cross complaint CROSS COMPLAINANT gives notice to CROSS-DEFENDANTS of CROSS-COMPLAINANT's rescission of the Subject Contract. CROSS-COMPLAINANT hereby offers to return to CROSS-DEFENDANTS the assets of subject business actually transferred, upon condition that CROSS-DEFENDANT return to CROSS-COMPLAINANT all consideration and benefit bestowed upon CROSS-DEFENDANTS by CROSS-COMPLAINANT so as to avoid unjust enrichment.

WHEREFORE, CROSS-COMPLAINANT prays for judgment against CROSS-DEFENDANTS as follows:

1. For compensatory damages in excess of $257,645.00 subject to proof at the time of trial.

2. In the alternative, for a determination that the contract between CROSS-COMPLAINANT and CROSS-DEFENDANT is rescinded;

3. Restitution by CROSS-DEFENDANT to CROSS-COMPLAINANT of all consideration paid by CROSS-COMPLAINANT to or for CROSS-DEFENDANTS benefit.

4. Restitution to CROSS-COMPLAINANT any additional benefit bestowed upon CROSS-DEFENDANTS.

5. For reasonable attorney fees pursuant to the terms of the Subject Contract.

6. For prejudgment interest at the legal rate, to the extent applicable.

1  7. For costs of suit herein incurred; and

2  8. Such other and further relief as the court deems just and proper.

3  Dated: January 31, 2008                          GERACI & LOPEZ

4

5                                          By: _____
                                               Stephen F. Lopez, Attorneys for Defendant/Cross
6                                              Complainant  Advantage  Towing  Company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sep 13 06 11:31p    Michael

CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUSINESS PURCHASE AGREEMENT AND
JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form BPA Revised 10/02)

Date April 22, 2007 _____ at _____ San Diego _____ California

1. OFFER:
   A. THIS IS AN OFFER FROM _____ Advantage Towing, Inc. by Aymen Ibrahim _____ ("Buyer")
      ☐ Individual(s), ☐ A Partnership, ☒ A Corporation ☐ An LLC, ☐ An LLP, ☐ Other _____
   B. THE BUSINESS TO BE ACQUIRED is known as A & M Towing, 1471 Morena Blvd _____ located in
      _____ San Diego _____ County of _____ San Diego _____, California ("Business"),
      described as Road side service and towing _____
   C. THE PURCHASE PRICE offered is Two Hundred Twenty-Six Thousand One Hundred Forty-Five _____
      _____ Dollars $ 226,145.00
   D. INVENTORY valued at approximately $ _____ including work in progress, is included in the purchase price
   E. CLOSE OF ESCROW shall occur on _____ (date) (or ☒ _____ 90 / annual _____ Days After Acceptance)

2. PAYMENT OF PURCHASE PRICE: Obtaining the loans below is a contingency of this Agreement unless (i) 2F is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of .................... $ 226,145.00
      is the agent submitting the offer (or to ☐ _____ ) by personal check
      (or ☐ _____ ), made payable to _____
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      or ☐ _____ with
      Escrow Holder (or ☐ into Broker's trust account).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ..... $ _____
      within _____ Days After Acceptance, or ☐ _____
   C. FIRST LOAN IN THE AMOUNT OF ............................................................................ $ _____
      NEW First Deed of Trust in favor of ☐ lender ☐ seller ☐ Small Business Administration, secured by Buyer's
      own real property or if real property is included in the sale, then by that real property, payable at maximum
      interest of _____ % fixed rate or _____ % initial adjustable rate with a maximum interest rate
      of _____ % balance due in _____ years, amortized over a period of not less than _____ years
      (if checked ☐ and with a margin not to exceed _____ %, tied to the following index _____ )
      Buyer shall pay loan fees/points not to exceed _____
      Additional terms: _____
   D. SECOND LOAN IN THE AMOUNT OF ....................................................................... $ _____
      NEW Second Deed of Trust in favor of ☐ lender, ☐ seller, ☐ Small Business Administration, secured by Buyer's
      own real property (or ☐ _____ ), payable at maximum interest of
      _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate of
      _____ % balance due in _____ years, amortized over a period of not less than _____ years
      (if checked ☐ and with a margin not to exceed _____ %, tied to the following index _____ )
      Buyer shall pay loan fees/points not to exceed _____
      Additional terms: _____
   E. LOAN SECURED BY BUSINESS ASSETS IN THE AMOUNT OF ......................................... $ _____
      Evidenced by a note in favor of Seller secured by the assets of the Business, together with a security agreement in
      the usual and customary form covering all assets of the Business, and a UCC-1 filing to be filed with the Secretary
      of State, which shall include proceeds of collateral, in ☐ first or ☐ second position, or ☐ _____
      payable at maximum interest of _____ % fixed rate or _____ % initial adjustable rate
      with a maximum interest rate of _____ %, amortized over a period of not less than _____ years
      and all due in not less than _____ years (if checked ☐ and with a margin not to exceed _____ %
      tied to the following index: _____ ) Buyer shall have the right, at Buyer's expense, to conduct a
      valuation of the assets within the time specified in paragraphs 8 and 26. If the assets' value is less than the
      amount of the loan provided for in this paragraph 2E, then the difference between the amount of the loan specified
      in the paragraph 2E, less the value of the assets, shall become an unsecured loan.
   F. ☒ ALL CASH OFFER (if checked) No loan is needed to purchase the Business. Buyer shall, within 7
      (or _____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
   G. ADDITIONAL FINANCING TERMS: ........................................................................ $ _____
      Buyers to deposit $ 226,145.00 in escrow upon opening of escrow in cashiers
      check payable to Chicago Title Escrow. _____
      _____
      _____

Buyer's Initials ( A.A. ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1995-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
BPA REVISED 10/02 (PAGE 1 OF 8)

BUSINESS PURCHASE AGREEMENT (BPA PAGE 1 OF 8)

Agent: MICHAEL BRANDEN    Phone: (310) 656-5550    Fax: (310) 656-5559    Prepared using WINForms® Software
Broker: RE/MAX All Cities    9456 Wilshire Boulevard #185, Beverly Hills, CA 91212

# EXHIBIT A

Property Address: A & B Towing, 1472 Moreno Blvd.    San Diego    Date: April 2, 2007

H. BALANCE OF PURCHASE PRICE (not including costs of securing loans and other closing costs) in the amount of . . . . $ _____
   to be deposited with Escrow Holder within sufficient time to close escrow.

I. PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $    226,145.00

CAUTION: Obligations secured by mixed collateral (i.e., both personal and real property) are subject to complex rules and court decisions under the California Civil Code, Commercial Code and the Code of Civil Procedure. Buyer and Seller are strongly cautioned to consult legal counsel in connection with the securing and enforcement of any such obligations.

   J. SELLER FINANCING: For any Seller financing designated above, which is to be secured by real property in favor of Seller, Buyer is to execute a note secured by a deed of trust in favor of Seller on the terms and conditions set forth in the attached addendum (C.A.R. Form SFA).

   K. LOAN APPLICATIONS: Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loans specified above.

   L. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2K) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.

   M. LOAN CONTINGENCY REMOVAL: (I) Within 17 (or ☐ _____ ) Days After Acceptance Buyer shall, as specified in paragraph 25, remove the loan contingency or cancel this Agreement; OR (II) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.

3. CLOSING AND POSSESSION:
   A. Possession shall be delivered to Buyer at _____ 5 ☐ AM ☒ PM, ☒ on the date of Close Of Escrow, ☐ on _____ or ☐ no later than _____ Days After Close Of Escrow. If Seller also owns the real property upon which this Business operates and transfer of title to the real property and possession of the Business do not occur at the same time, Owner and Buyer are advised to: (i) enter into a written agreement regarding possession; and (ii) consult with their insurance and legal advisors or other appropriate professional(s).
   B. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.
   C. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems and alarms.

4. ESCROW HOLDER: ☒ Buyer ☐ Seller shall pay escrow fees _____
   Escrow Holder shall be Laurel Hill Escrow _____

5. FORM OF OWNERSHIP: The Business shall be owned in the form designated in Buyer's escrow instructions. THE MANNER OF TAKING TITLE AND THE FORM OF OWNERSHIP OF THE BUSINESS MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

6. ASSETS TRANSFERRED: With the exception of cash or cash equivalents on deposit in any financial institution, and assets excluded below, Buyer is purchasing all assets of the Business, including but not limited to: inventory for sale, machinery, furniture, fixtures and other equipment, leasehold improvements, transferable government licenses and permits, customer lists, fictitious business names, trade names and trademarks, logos, copyrights and patents, signs and advertising materials, telephone and fax numbers, web sites, URL names, e-mail addresses, accounts receivable, vendor lists and catalogs, goodwill, agreements not to compete, franchise agreements, distribution rights, employee lists and information, computer and customer software, and customer deposits. All items transferred        that        are        leased        are        subject        to        the        terms        of        existing        lease(s).
   ☒ Other See Addendum A1 _____
   Excluded asset: 1991 1996 Nissan Minocad, 1N65D16Y8TC307920H, 89 20000111, 4200, 1H7GCABSXHJ7050734820, AC, 1996 Mitsubishi, FH 210, OF, 6003J567L0020081709FB7733620, 911, 1997 GMC 3500 HD, 1GBC33C1XDE19511400M13849393, 514, 2000 Mitsubishi, FE2R, 3GDFP1DKKX00JP4244011FD7591798.

7. LIABILITIES TRANSFERRED: Buyer is NOT purchasing any liabilities of the Business, EXCEPT those items checked below:
   A. ☐ Accounts payable, per attached list.
   B. ☐ Service, maintenance and advertising agreements, per attached list.
   C. ☐ Other _____

8. ☐ INVENTORY (if checked):
   A. Buyer's acceptance of inventory is a contingency of this Agreement. Buyer shall have the right, at Buyer's expense, within the time specified in paragraph 25, to conduct a physical inventory and, in writing, remove the contingency or cancel this Agreement.
   B. Buyer has the right to confirm the inventory within 5 (or ☐ _____ ) Days Prior to Close Of Escrow. The purchase price shall be adjusted to reflect the remaining inventory. The adjustment is to be added to or subtracted from the ☐ cash down payment; or ☐ seller financing.

Buyer's Initials _____
Seller's Initials _____
Reviewed by _____ Date _____

Copyright © 1994-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 2 OF 9)

BUSINESS PURCHASE AGREEMENT (BPA PAGE 2 OF 9)

Sep 15 06 11:32p    Micheal

Property Address: _A & N Texaco, 1473 Morena Blvd., San Diego_    Date _April 23, 2005_

9. **SELLER DISCLOSURE; BUYER INVESTIGATION:**
Seller shall, within the time specified in paragraph 25, provide to Buyer, or to Buyer's counsel, accountant or other designated representative, the lists of items or documents, or Copies thereof, for the items checked below. For each item, as applicable, Seller shall include a statement of whether the item is owned or leased and whether Seller has any legal, proprietary interest, or intellectual property rights in, or restrictions on, the item. Buyer, within the time specified in paragraph 26, shall then investigate the items provided to Buyer and take the action specified in paragraph 26.

- [ ] Inventory, including work in progress
- [ ] Machinery
- [x] Furniture, fixtures and other equipment
- [ ] Other personal property
- [ ] Leasehold improvements
- [ ] Government licenses and permits
- [ ] Customer lists
- [ ] Fictitious business name statements
- [x] Trade names and trademarks
- [x] Logo
- [ ] Copyrights and patents
- [ ] Schedule of accounts receivable
- [ ] Business appraisal
- [x] Other assets: _Office furniture belonging to college located at 1473 Morena Blvd, San Diego, CA_
- [ ] Schedule of accounts payable
- [ ] Other liabilities:
- [ ] Employee estoppel certificates
- [ ] Sales tax returns for the years
- [ ] Federal and state income tax returns for the years
- [ ] Financial statements for the years
- [ ] Employment withholding returns for the years

- [x] Signs and advertising material
- [ ] Telephone and fax numbers
- [ ] Websites, URL names and e-mail addresses
- [ ] Vendor lists and catalogs
- [x] Goodwill
- [ ] Agreements not to compete
- [ ] Franchise agreements
- [ ] Distribution rights
- [ ] Employee lists and information
- [ ] Computer and customer software
- [ ] Customer deposits
- [ ] Lease
- [ ] Service, maintenance and advertising agreements
- [ ] Proposed allocation of purchase price among assets

SELLER REPRESENTS THAT: (i) THE BOOKS AND RECORDS THAT OWNER PROVIDES ARE THOSE MAINTAINED IN THE ORDINARY AND NORMAL COURSE OF BUSINESS; AND (ii) FEDERAL AND STATE TAX RETURNS THAT SELLER PROVIDES ARE COPIES OF THOSE FILED WITH THE APPLICABLE GOVERNMENTAL AGENCIES.

10. **CONSULTING AND TRAINING:** Seller shall consult with Buyer to show Buyer methods used in operating the Business. Seller shall provide consulting services for a period of ___0___ Days After Close Of Escrow at no cost to Buyer, which services shall not exceed 2 to 4 of ___0___ hours. Seller shall not be responsible for training Buyer in the basics of operating a business of the type being sold pursuant to this Agreement but only to alert Buyer to the nuances, as determined by Seller, of operating this type of business. NOTE TO BUYER: IF YOU ARE NOT ALREADY TRAINED IN THIS TYPE OF BUSINESS, YOU ARE STRONGLY ADVISED TO SEEK TRAINING.

11. [x] **AGREEMENT NOT TO COMPETE** (if checked): As a material part of the consideration of the sale, Seller agrees not to operate or engage directly or indirectly, whether as a principal, agent, manager, employee, owner, member, partner, stockholder, director or officer of a corporation, trustee, consultant, or any other capacity whatsoever, any business the same as, or substantially similar to, or in competition with the Business within a radius of ___3___ miles from the current location of the Business (or [ ] _____ ) for a period of ___5___ year(s) from the date of final transfer of the Business, so long as Buyer, or Buyer's successor-in-interest is operating the Business in said area.

12. **LEASE** (Check applicable items): The sale is contingent upon Buyer obtaining, within 21 (or [ ] _____ ) Days After Acceptance, the assignment, new lease, option to extend, sublease or other lease as indicated below. Buyer shall submit an application for such lease to Seller's landlord or Seller, as applicable, within 15 (or [ ] _____ ) Days After Acceptance.
   A. [ ] An assignment of Seller's existing lease.
   B. [x] A new lease with Seller's landlord, on terms acceptable to Buyer, to become effective concurrently with the Close Of Escrow.
   C. [ ] An option to extend Seller's present lease for an additional _____ year(s), on terms acceptable to Buyer and Seller's landlord.
   D. [ ] A sublease with Seller, on terms acceptable to Buyer, to become effective concurrently with the Close Of Escrow. Buyer and Seller are advised that such sublease may require notice to or approval of Seller's landlord.
   E. [x] OTHER: _The sale is not contingent upon buyer obtaining lease. Buyer is not obtaining this lease._

13. [ ] **PURCHASE OF REAL PROPERTY** (if checked): The sale is contingent upon Buyer's ability to purchase, concurrently with the Close Of Escrow, the real property in which the Business operates. A separate Real Property Purchase Agreement is required (C.A.R. Form BPA)

14. **LICENSES:**
   A. LIQUOR: If transfer of a liquor license is included in this sale, Seller shall comply with the Alcoholic Beverage Control Act concerning such transfer. Escrow shall not close, and no funds shall be transferred to Seller, until Escrow Holder is advised by the State of California Department of Alcoholic Beverage Control that the license transfer has been approved. The costs of such transfer shall be paid _____
   B. OTHER: (if checked) This sale is contingent upon Buyer's obtaining, prior to the Close Of Escrow, the license(s) indicated below. Buyer shall apply for such license(s) within 15 (or [ ] _____ ) Days After Acceptance.
      1. [ ] City license: _____
      2. [ ] State license: _____
      3. [x] Other: _This sale is not contingent upon buyer's obtaining gasoline for Aymen Arekat in receiving contract from Automobile Club of Southern California._

15. **FRANCHISE:** If the Business is a franchise, in addition to being subject to Buyer's acceptance of the terms of franchise as provided in paragraph 3, the sale is also contingent upon Franchisor's acceptance of Buyer.

16. **SALES AND USE TAX:** Buyer shall pay any sales or use tax payable as a result of the sale under any law and shall furnish Seller with Resale Certificates for any items bought for resale.

Buyer's Initials ___AA___ / _____
Seller's Initials ___SM___ / _____

Reviewed by _____  Date _____

Copyright © 1998-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 3 OF 5)
BUSINESS PURCHASE AGREEMENT (BPA PAGE 3 OF 5)

Property Address: _____ Date April 16, 2002

17. PRORATIONS: Personal property taxes, business taxes, rents, interest, insurance acceptable to Buyer, and other deposits shall be prorated as of Close Of Escrow (or ☐ _____).

18. TAX CLEARANCES: Seller shall deliver to Escrow Holder proof that any (i) applicable, state and federal income tax withholdings are current. Amounts withheld but not yet payable will be transferred in escrow or credited to Buyer. Seller shall also deliver to Escrow Holder any clearance documents available from the State Board of Equalization or Employment Development Department regarding S.D. unemployment insurance and FICA withholdings. No funds shall be released from escrow before such delivery.

19. NOTICES OF VIOLATIONS: Seller represents that, to the best of Seller's knowledge, no notices of violation of federal, state or local statute(s), law(s) or regulation(s) exist, or are filed or issued, that affect the operation of the Business, including any such notices regarding the real property in which the Business is situated ("Notices"). EXCEPT: _____

If prior to Close Of Escrow, Seller receives or becomes aware of any Notices filed against or affecting the Business, Seller shall immediately notify Buyer.

20. BULK TRANSFER: Seller shall comply with the Bulk Sales provision of Division 6 of the Uniform Commercial Code, Bulk Transfer Section, as the law applies within the Seller's state.

21. TITLE: Seller shall furnish to Buyer bills of sale and other instruments of transfer or assignment necessary to carry out this Agreement.

22. LIENS; ENCUMBRANCES; RESTRICTIONS: Seller warrants that, to the best of Seller's knowledge, there are no undisclosed liens, encumbrances or restrictions upon the Business.

23. OPERATION OF BUSINESS DURING ESCROW: During the escrow period, Seller shall: (i) operate the Business diligently and in substantially the same manner as prior to this offer; (ii) maintain the goodwill of the Business; (iii) keep all equipment and personal property in normal working order and _____

24. SELLER REPRESENTATIONS: Seller's representations and warranties set forth herein, or in any written statements delivered to Buyer, shall be true and correct at Close Of Escrow, and shall survive the transfer of ownership of the Business.

25. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may be extended, altered, modified or changed only by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form RRCR).

   A. SELLER HAS: 7 (or ☒ _____) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraph 8.

   B. BUYER SHALL, within the times set forth below, take the specified action and, in writing, either remove the applicable contingency or cancel this Agreement.
      (1) BUYER HAS: 17 (or ☒ 7 ) Days After Acceptance to complete all buyer investigations, unless otherwise agreed in 25B(2); approve all disclosures, reports, and review of reports and other applicable information, for which Buyer is responsible or which Buyer receives from Seller; and approve all matters affecting the Business.
      (2) ☐ (If checked) BUYER HAS: 30 (or ☒ 7 ) Days After Acceptance to complete geologic, soil and environmental inspections.
      (3) By the end of the times specified in 25B(1) and (2) (or 3M for loan contingency; 13 for lease contingency; 15 for purchase of property contingency, 14 license contingency, or 15 franchise contingency). Buyer shall remove, in writing, the applicable contingency (C.A.R. Form RRCR) or cancel this Agreement. However, if Seller is unable to deliver any governmental-mandated inspections or reports required as a condition of closing within the time specified in 25A, Buyer has 5 (or ☐ _____) Days After receipt of such inspection or report or the time specified in 25B(1), whichever is later, to, in writing, remove the applicable contingency or cancel this Agreement.

   C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL.
      1) Seller right to Cancel; Buyer Contingencies: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in the Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.
      (2) Even after the expiration of the time specified in 25B.3, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 25C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 25C(1).
      (3) Seller right to Cancel; Buyer Contract Obligations: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B, (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2K, (iv) if Buyer fails to provide verification as required by 2F or 2L, or (v) if Seller reasonably disapproves of the verification provided by 2F or 2L. Seller is not required to give Buyer a Notice to Perform regarding Close Of Escrow.
      (4) Notice To Buyer To Perform: The Notice to Buyer to Perform (C.A.R. Form NBP) shall (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 25C(3) obligation.

   D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all buyer investigations and review of records and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

   E. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale, and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award.

Copyright © 1989-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 4 OF 8)

Buyer's initials ( A.A. )( _____ )
Seller's initials ( M )( S.A. )



Reviewed by _____ Date _____



BUSINESS PURCHASE AGREEMENT (BPA PAGE 4 OF 8)

Property Address: _____ Date: _____ 2002

26. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge (i) Federal, state and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances, (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement, (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Business, and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Business.

27. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act (ADA) prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Business is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

28. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement.

Buyer's Initials A A / Seller's Initials SL

29. **DISPUTE RESOLUTION:**
   A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 29B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

   B. **ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 29B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with experience in the purchase and sale of a business, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.
   (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
   (3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 29A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to this Agreement.

   "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL, BINDING ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."
   "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL, BINDING ARBITRATION."

Buyer's Initials A A / Seller's Initials _____

Copyright © 1989-2002, CALIFORNIA ASSOCIATION OF REALTORS, INC.
BPA REVISED 10/02 (PAGE 5 OF 9)

Buyer's Initials A A
Seller's Initials
Reviewed by _____ Date _____



BUSINESS PURCHASE AGREEMENT (BPA PAGE 5 OF 9)

Property Address _____ Date: _____

30. MLS / PROPERTY DATA SYSTEM: If Broker is a participant of a multiple listing service ("MLS") or property data system ("PDS"), Broker is authorized to report the terms of this transaction to any such MLS or PDS, to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

31. EQUAL OPPORTUNITY: The Business is sold in compliance with federal, state, and local anti-discrimination Laws.

32. ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 29A.

33. SELECTION OF SERVICE PROVIDERS: If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

34. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES. Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

35. ASSIGNMENT: Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.

36. SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

37. COPIES: Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals, and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents if the originals are in the possession of the furnishing party.

38. GOVERNING LAW: This Agreement shall be governed by the Laws of the state of California.

39. AUTHORITY: Any person(s) signing this Agreement represents that such person(s) has full power and authority to bind that person's principal, and that the designated Buyer and Seller have full authority to enter into and perform this Agreement. Entering into this Agreement and the completion of the obligations pursuant to this Agreement, do not violate any Articles of Incorporation, Articles of Organization, By-Laws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

40. OTHER TERMS AND CONDITIONS, including attached supplements:
☐ Seller Financing Addendum and Disclosure (C.A.R. Form SFA)

_Seller to pay Jimmy Johnson Kearny Mesa Chrysler for repairs made to unit R17_

_Buyer to take possession on Tom Grigha, and Battery. Upon assumption of loan transfer of title and proof of insurance. Upon assumption of loan transfer of title and proof of insurance. Buyer's deposit passes to seller and becomes non-refundable. Sale price is fixed without further adjustments._

_Buyer pays agents commission of $21,700.00 dollars in cashier check payable to Laurel Hill Escrow. Buyer instructions to escrow officer are as follows: Escrow to release half of agents commission upon proof of escrow to Michael Brandon. Remainder of agents commission to be held in escrow until close of escrow._

41. RISK OF LOSS: Any risk of loss to the Business shall be borne by Seller until ownership has been transferred to Buyer.

42. DAMAGE OR DESTRUCTION: If the Business or real property in which the Business is situated is destroyed or materially damaged prior to Close Of Escrow, then, on demand of Buyer, any deposit made by Buyer shall be returned to Buyer and this Agreement shall terminate.

43. INDEMNIFICATION: Unless otherwise expressly provided herein, upon completion of sale, Seller agrees to indemnify, defend and hold Buyer harmless from all liability resulting from loss, damage or injury to persons or property in any manner arising out of or incident to the operation of the Business prior to transfer to Buyer. Buyer agrees to indemnify, defend and hold Seller harmless from all liability resulting from loss, damage or injury to persons or property in any manner arising out of or incident to the operation of the Business after transfer to Buyer.

44. NOTICES: Whenever notice to given under this Agreement, each notice shall be in writing and shall be delivered personally, by facsimile or by mail, postage prepaid. Notice shall be delivered to the address set forth below the recipient's signature of acceptance. Either party may change its notice address by providing notice to the other party.

Copyright © 1989-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 8 OF 9)

Buyer's Initials _____
Seller's Initials _____
Reviewed by _____ Date _____



BUSINESS PURCHASE AGREEMENT (BPA PAGE 8 OF 9)

Property Address: _____ San Diego _____ Date: _____ 2007

45. DEFINITIONS: As used in this Agreement:
   A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. "Agreement" means the terms and conditions of this accepted Business Purchase Agreement and any accepted counter offer and addenda.
   C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
   D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
   F. "Days" means calendar days, unless otherwise required by Law.
   G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
   J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 28C(4)) or until the previously agreed time limit, whichever occurs last, to remove a contingency or perform as applicable.
   L. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
   M. Singular and Plural terms each include the other when appropriate.

46. AGENCY:
   A. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Business. Seller understands that Broker representing Seller may also represent other sellers with competing businesses of interest to this Buyer.
   B. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
   Listing Agent _____ Remax DTD Michael Brandon _____ (Print Firm Name) is the agent
   of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
   Selling Agent _____ (Print Firm Name) (if not same
   as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

47. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 3B, 13, 14A, 17, 18, 20, 21, 25G, 34, 40, 44, 45, 47, 50, 53A, 54 and paragraph D of the section titled Real Estate Brokers on page 9. If a Copy of the separate compensation agreement(s) provided for in paragraph 50 or 53A, or paragraph D of the section titled Real Estate Brokers on page 9 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
   B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☒ _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
   C. Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 50, 53A and paragraph D of the section titled Real Estate Brokers on page 9. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 50 and 53A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.
   A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be
   D. delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Copyright © 1995-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 7 OF 9)

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

BUSINESS PURCHASE AGREEMENT (BPA PAGE 7 OF 9)

Property Address: _____ Date: _____

48. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Business, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

49. **SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: (i) Brokers do not decide what price Buyer should pay or Seller should accept; (ii) Brokers do not guarantee the performance or repairs of others who have provided services or products to Buyer or Seller; and (iii) they will seek legal, tax, insurance, title and other assistance from appropriate professionals.

50. **BROKER COMPENSATION FROM BUYER.** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

51. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Business on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Business for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

52. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____ Michael Brandon _____ who is authorized to receive it, by 5:00 PM on the third calendar day after this offer is signed by Buyer (OR, if checked, □ by _____ (date), at _____ 11 ____ □ AM □ PM)

Buyer ___ *Alngar Arekat* _____ April 26, 2007

By _Arekat_

Name Printed _Advantage Towing Inc._ _____ Date 4-7-03

Address _____

Telephone _____ Fax _____ City _____ State _____ Zip _____ E-mail _____

Buyer _____

By _____

Name Printed By _Ayman Arekat_ _____ Date _____

Address _____

Telephone _____ Fax _____ City _____ State _____ Zip _____ E-mail _Arekat @ _____

Notice Address, if Different: _____

53. **BROKER COMPENSATION FROM SELLER:**
   A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
   B. If escrow does not close, compensation is payable as specified in that separate written agreement.

54. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of this Business, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Business on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Broker to deliver a Signed Copy to Buyer.
   □ (if checked) SUBJECT TO THE ATTACHED COUNTER OFFER, DATED _____

Seller ___ _____

By _____

Name Printed _VARTAN YACUBYAN_ _____ Date 4/26/07

Address _____

Telephone (818)___-___ Fax _____ City _____ State _____ Zip _____ E-mail _vyacub @ sbc.llc.com_

Seller _____

By _____

Name Printed _Shireen J Cabellero Inc._ _____ Date 4/26/07

Address _____

Telephone _____ Fax _____ City _____ State _____ Zip _____ E-mail _____

Notice Address, if Different: _____

( _____ / _____ ) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent
Initials on (date) _____ at _____ □ AM □ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

Copyright © 1998-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
BPA REVISED 10/02 (PAGE 8 OF 9)

Buyer's Initials ( _A.A._ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

BUSINESS PURCHASE AGREEMENT (BPA PAGE 8 OF 9)



**DISCLOSURE REGARDING
REAL ESTATE AGENCY RELATIONSHIPS**
(As required by the Civil Code)
(C.A.R. Form AD, Revised 10/04)

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller:
    A Fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer:
    A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.

This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on the reverse hereof. Read it carefully.

I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☑ BUYER ☐ SELLER  Advantage _____, Inc. _____ Date _April_15, 2007_ ___ Time _____ ☐ AM ☐ PM

☐ BUYER ☒ SELLER  _____ Date _April 23, 2007_ ___ Time _2:30_ ☐ AM ☐ PM

AGENT _Remax All Michael Brandon _____ By _____ Date _____
        (Please Print) (Associate-Licensee or Broker-Signature)

THIS FORM SHALL BE PROVIDED AND ACKNOWLEDGED AS FOLLOWS (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer, the Listing Agent shall have one AD form signed by Seller and one signed by Buyer.
• When Buyer and Seller are represented by different brokerage companies, the Listing Agent shall have one AD form signed by Seller and the Buyer's Agent shall have one AD form signed by Buyer and one AD form signed by Seller.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

  Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

AD REVISED 10/04 (PAGE 1 OF 1)                                   Reviewed by _____ Date _____

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS (AD PAGE 1 OF 1)**

Agent: MICHAEL BRANDON          Phone: (818) 522-0859     Fax: (818) 990-5599          Prepared using WINForms® software
Broker: RE/MAX All Cities      8465 Wilshire Boulevard  #300  Beverly Hills  CA 91212



CALIFORNIA
ASSOCIATION
OF REALTORS

ADDENDUM
(C.A.R. Form ADM, Revised 10/01)

No. 1

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☒ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ other _____

dated ___April 24, 2007___ , on property known as _A.J.M. Towing_

in which ___Advantage Towing, Inc., Fox Ayman Alkateb___ is referred to as ('Buyer/Tenant')
and ___IDevelopment, Inc., V. Yacoubian, S. Yacoubian___ is referred to as ('Seller/Landlord').

_All under is to be leased, on an all is basis._

_The following service units are to be secured for buyer:_

_New 2007 GMC Topkick..._
_Unit #7 2003 GMC 3500..._
_Unit #11 2004 Mitsubishi FE..._
_Unit #15 2003 Mitsubishi FH210..._
_Unit #16 2003 Mitsubishi FE211..._
_Unit #17 2004 GMC 3500..._
_Unit #18 2004 Mitsubishi FE211..._
_Unit #19 2004 Ford F450..._
_Unit #20 2005 Mitsubishi FE145..._
_Unit #21 2005 Isuzu NPR..._
_Unit #24 2004 Mitsubishi FE180..._

_Total Monthly payment for all units above is $11,095.00_

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date April 24, 2007
Buyer/Tenant _____
Advantage Towing, Inc.
Buyer/Tenant _____
Fox Ayman Alkateb

Date April 24, 2007
Seller/Landlord _____
IDevelopment, Inc. V. Yacoubian
Seller/Landlord _____
S. Yacoubian

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form...

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

ADDENDUM (ADM-11 PAGE 1 OF 1)

RE/MAX All Cities   9454 Wilshire Boulevard   #150, Beverly Hills CA 91212
Phone (818) 595-1358   Fax (818) 595-3350   MICHAEL BOARDMAN